THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JASON C. ROBINSON, Defendant-Appellant.

(No. 54742; ▮▮▮▮▮▮▮)

First District—December 28, 1971.

Gerald W. Getty, Public Defender, of Chicago (Herbert Becker, Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Stephen R. Kramer, of counsel,) for the People.

Mr. PRESIDING JUSTICE LEIGHTON delivered the opinion of the court:

Defendant, and two others not in this appeal, were charged with burglary. He waived trial by jury, was convicted and sentenced to serve three to ten years. In his original brief, the only issue presented was whether defendant was proven guilty beyond a reasonable doubt. During oral argument, defendant's counsel requested and we allowed the filing of a supplemental brief which raised the additional question whether the sentence imposed on defendant violates the principle of equal justice and is so severe that it requires interposition of our power to reduce sentences.

(See Ill. Rev. Stat. 1971, ch. 110A, par. 615(b)(4), Supreme Court Rule 615(b)(4).) An understanding of these issues requires a summary of the facts.

At about noon on April 5, 1968, the day of the "Martin Luther King Riots" in Chicago, James Guzzo, owner of Herb's Men's Shop at 524 North Avenue, closed and locked his store, securing all the windows and doors. At about 2:30 P.M. he was notified that rioters and looters had broken into the store. At about 6:00 P.M., four Chicago policemen in uniform, driving west on North Avenue in an unmarked squad car, stopped in front of Herb's Men's Store. The flexible gate which protected the front window was pulled down. The window was smashed. The officers "[o]bserved a number of people running from [the store] carrying merchandise." Inside were opened boxes of men's clothing consisting of shirts and sweaters. Merchandise was on the floor and "[t]he whole store was in a state of disarray." One officer remained at the squad car; three entered the store. Two of them, Austin and Weingart, testified at the trial.

According to these officers, there was artificial light inside and it was light outside. They saw three men "[i]n the back, toward the back of the store, back of the showroom area * * *." The men ran. According to Austin, "Officer Weingart hollered, 'Come on out. Police officers.'" Then, the defendant came out of a washroom wth his hands raised and one of the other two co-defendants "[c]ame from behind the hat rack or something." The third co-defendant was found hiding in a basement. The three were arrested and later indicted for burglary.

The three defendants testified in their defense. Diametrically contradicting Austin and Weingart, each testified that he was arrested, not in Herb's Store but outside in the street while each watched the store being looted by others. Each defendant denied knowing the other two prior to April 5, 1968. Each testified that he was taken into Herb's Men's Store after he was arrested. After their testimony and that of the mother of one of the co-defendants, Officer Austin testified in rebuttal that the three defendants were arrested in the store: "[t]wo of them arrested in the rear of the store, and one was arrested in the basement of the store * * *." The State then offered and the court received in evidence a certified copy of a conviction record which showed that in 1964 the defendant in this appeal was convicted of burglary. The trial court then found each defendant guilty of burglary as charged in the indictment. Oral post-trial motions were made and overruled. After a hearing in aggravation and mitigation of the offense, the court granted the two co-defendants probation and sentenced defendant to imprisonment.

■■ The first issue is whether the evidence in this record proves beyond a reasonable doubt that on April 5, 1968 defendant committed burglary

of Herb's Men's Store in Chicago. Defendant contends it does not. He argues that the testimony of Officers Austin and Weingart, contradicted by the testimony of the three defendants, presented the trial court with a "[h]opeless conflict in the evidence * * *" concerning whether defendant and the other two were arrested in the street while watching a general looting of Herb's Men's Store, or whether, as the two police officers testified, the three were found inside the store with boxes of men's clothing opened and the general interior in disarray. As trier of the facts with the responsibility to determine which version was true, the trial judge resolved the conflict by finding that the police officers' version was the truth, even though their testimony was contradicted by the defendants. This was proper. *People v. Cox,* 20 Ill.2d 458, 170 N.E.2d 531; *People v. Greenberg,* 302 Ill. 566, 135 N.E. 67.

■■ From this finding it appears that on April 5, 1968, at about 6:00 P.M., defendant, without authority entered and without authority remained in Herb's Men's Store in which were items of personal property that could have been the subject of larceny. The surrounding circumstances showed nothing inconsistent with the inference that defendant and his companions entered the store with the intent to commit larceny. (Compare *People v. Soznowski,* 22 Ill.2d 540, 177 N.E.2d 146.) For example, according to the two officers whose testimony the trial judge accepted as true, defendant, when seen by them in the store, ran into a washroom from which, when commanded, he emerged, hands raised. He was in the company of two others: one hid behind a rack; the other sought hiding in a basement. Men's shirts and sweaters were scattered about. This evidence proved burglary.[1] *People v. Johnson,* 28 Ill.2d 441, 192 N.E.2d 864; *People v. Reynolds* (Ill.App.2d), 268 N.E.2d 545.

The second issue is whether the sentence requires interposition of our power to "[r]educe the punishment imposed by the trial court * * *." Defendant contends that the trial court based the sentence on the unchallenged statements of the Assistant State's Attorney about defendant's criminal record; that the three to ten year sentence is excessive, not proportioned to the nature of the offense and it violates the principle of equal justice because the two co-defendants were granted probation and defendant was sentenced to prison. The State counters defendant's contention with the argument that informal presentation of a defendant's criminal record at a hearing in aggravation or mitigation of an offense is proper; that defendant has failed to make a showing which would warrant reduction of the sentence; and that defendant's sentence does not

---

[1] In this state "[a] person commits burglary when without authority he knowingly enters or without authority remains within a building * * * with intent to commit therein a felony or theft." Ill. Rev. Stat. 1967, ch. 38, par. 19—1(a).

violate the principle of equal justice because it reflects a recognition of different rehabilitation potential between the two co-defendants, on the one hand, and defendant on the other. The competing contentions of the parties serve to focus our attention on the facts developed and emphasized in the aggravation or mitigation hearing.

It was disclosed that one co-defendant was an 18-year old Waller High School senior. The State conceded he had no criminal record. His court-appointed counsel, without objection, introduced into the record six letters: one from a YMCA agency where he worked after school hours, one from an assistant principal and four from his teachers. All spoke of him as an industrious and reliable young man. The trial judge sentenced the 18-year old to serve three years probation.

The other co-defendant was 19 years old, married, living with his family and gainfully employed as a warehouseman whose employer described him as a "[s]teady, reliable, sober and good employee." He, too, had no criminal record. He had spent 17 days in jail awaiting trial. The court granted him three years probation, with 60 week-end days in the House of Correction and credit for the 17 days pretrial incarceration.

Defendant was 31 years old. The State's Attorney, apparently from records, told the court that in October 1954 defendant was sentenced to six months in the County Jail for tampering with an automobile. In April 1957, in a two-count indictment, defendant was convicted of burglary and sentenced to serve two concurrent terms of one to two years. He was discharged on February 2, 1959, but on June 15, 1959, he was again charged with burglary. On September 22, 1959, defendant was sentenced to serve two to six years. He was released on December 23, 1963. On March 24, 1964, defendant was again convicted of burglary and sentenced to serve four to six years. Defendant was released from the 1964 imprisonment on March 29, 1968. Thus, defendant had been out of prison exactly 7 days before he was arrested and charged with burglary in this case. After hearing the uncontradicted recital of defendant's criminal record, the trial judge sentenced defendant to serve three to ten years.

■■ Although there was no objection in the trial court, defendant now argues that the trial judge based the sentence on the unchallenged statements of the Assistant State's Attorney who recited defendant's criminal record. Ill. Rev. Stat. 1967, ch. 38, par. 1—7(g) provides that "[f]or the purpose of determining sentence to be imposed, the court shall * * * hear and receive evidence * * * as to the * * * criminal record of the offender * * * in aggravation or mitigation of the offense." In such a hearing, strict rules of evidence do not apply. (*People v. Hurst*, 42 Ill.2d 217, 247 N.E.2d 614; *People v. O'Laughlin*, 122 Ill. App.2d 218, 258 N.E.2d 154.) Therefore, there appearing no impropriety,

the trial judge could receive the informal presentation of defendant's criminal record at the hearing in aggravation or mitigation of the offense. See *People v. Redfern*, 118 Ill.App.2d 334, 254 N.E.2d 171.

 Under our law guilt is personal; sentence is individual. One purpose of our criminal code is to "[p]rescribe penalties which are proportionate to the seriousness of offenses and which permit recognition of differences in rehabilitation possibilities among individual offenders * * *." (Ill. Rev. Stat. 1967, ch. 38, par. 1—2(c).) Our system of criminal justice does not contemplate that in every case there be similar punishment of persons similarly guilty of the same offense. Modern penology teaches that punishment should fit the offender, not merely the crime. If a sentence is to fit one of several offenders, a lesser punishment of one does not impeach a greater sentence imposed on another. (See *People v. Cox,* 119 Ill.App.2d 163, 167, 255 N.E.2d 208.) The difference between two sentences imposed in the same case can be the difference in the criminal records of the defendants involved. See *People v. Loyd*, 125 Ill. App.2d 196, 260 N.E.2d 63; *People v. Newberry*, 1 Ill.App.3d 251, 273 N.E.2d 205.

In contending that his sentence violates the principle of equal justice, defendant relies on the rule of *People v. Steg*, 69 Ill.App.2d 188, 192, 215 N.E.2d 854 that "[w]here there is no basis either in the records of the individuals involved or in the nature of the participation of such individuals in the crime which would justify a more severe sentence as to one of equal participants in such criminal venture, a sentence which arbitrarily imposes a greater punishment or penalty upon one or more of the individuals than another should not be approved." This rule, however, presupposes equal individuals equally susceptible to the same prospects of rehabilitation and absence of some reason for differences in sentencing. *People v. Biggs*, 89 Ill.App.2d 324, 327 N.E.2d 626.

██ A criminal record is relevant and pertinent in determining the appropriate sentence to be imposed. (*People v. Hart* (Ill.App.2d), 270 N.E.2d 102.) Citing *People v. Heise*, 35 Ill.2d 214, 220 N.E.2d 438, we said in *Hart* that "[a] sentence that takes into consideration the criminal record of the offender is proper as long as the term imposed is within the statutory range of sentences required by law."[2] In *People v. Harden*, (Ill.App.2d), 265 N.E. d 897, a 40-year old defendant convicted of burglary was sentenced to serve not less than two nor more than ten years. His 21-year old co-defendant found guilty of the same offense was granted

---

[2] The sentence in this case is well within the statutory range because "[a] person convicted of burglary shall be imprisoned in the penitentiary for any indeterminate term with a minimum of not less than one year." Ill. Rev. Stat. 1967, ch. 38, par. 19—1(b).

probation. The appellate court held that the older defendant's criminal record was a factor properly considered with others in determining imposition of the longer sentence on the defendant who appealed.

■■ Therefore, because of the vast difference between defendant's age and those of his co-defendants and his comparatively poor potential for rehabilitation as shown by his criminal record, we conclude that defendant's sentence was not excessive, it was not disproportionate to the nature of the offense nor did it violate the principle of equal justice. The judgment is affirmed.

Judgment affirmed.

SCHWARTZ and GOLDBERG, JJ., concur.